UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

TY-RON STEVEN ANDERSON,

              Plaintiff,

v.

UNKNOWN GALLAGHER et al.,

              Defendants.

_____/

Case No. 2:23-cv-97

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events

about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Lieutenant Unknown Martin, Sergeants Unknown Blemke and Unknown Gunroe, Correctional Officers Unknown Gallagher and Michael Ford, and Registered Nurse Maria Bennett. Plaintiff indicates that he is suing Defendants in their official and personal capacities. (ECF No. 1, PageID.5.)

Plaintiff alleges that on March 20, 2020,[1] he wrote a letter to URF Warden Connie Horton (not a party) to complain about Defendant Gallagher's "unprofessional conduct." (*Id.*, PageID.7.) Two days later, Defendant Gallagher threatened Plaintiff, stating, "I am going to make your life a living hell in F-unit. Now that I know your name you better make sure that you dot your I's and cross your T's because you are my new project." (*Id.*) Later that day, Defendant Gallagher subjected Plaintiff to a shakedown search and ordered Plaintiff to remove his shoes. (*Id.*, PageID.7–8.) Plaintiff told Defendant Gallagher that "the lobby floor in F-unit was nasty and soiled from traffic in and out of the unit." (*Id.*, PageID.8.) Plaintiff states that "the removal of shoes is not standard practice for a pat down search." (*Id.*) Plaintiff told Defendant Gallagher that he would write a grievance if she forced him to remove his shoes. (*Id.*) Defendant Gallagher responded, "Take off your shoes or go to seg." (*Id.*) Plaintiff complied "and later wrote a grievance on [Defendant] Gallagher for retaliation." (*Id.*)

On February 26, 2021, Plaintiff was lying on his bunk for the 11:00 a.m. count when Defendant Gallagher entered Plaintiff's cube. (*Id.*) Defendant Gallagher "snatched a sheet and hanger off Plaintiff's bunk[,] causing the hanger to strike Plaintiff in the face at the corner of his

---

[1] Plaintiff writes that he sent the letter on March 20, 2023, but the grievances he submitted as exhibits to his complaint indicate that he sent the letter on March 20, 2020. (ECF No. 1-1, PageID.22–23.) Moreover, Plaintiff has set forth his factual allegations in chronological order, and those allegations concern events that occurred in 2020, 2021, and 2022. The Court, therefore, construes Plaintiff's references to 2023 to be a typographical error.

eye." (*Id.*) Plaintiff then went to the chow hall, where he told Defendant Blemke about the assault and asked for permission go to the healthcare department. (*Id.*) Defendant Blemke denied Plaintiff's request and told Plaintiff to write a grievance. (*Id.*)

Plaintiff was finally sent to the healthcare department when he told Prison Counselor Story (not a party) about the assault. (*Id.*) When Plaintiff arrived at the healthcare department, Defendant Bennett "attacked" Plaintiff verbally, stating, "You're overreaching, and making a mountain out of a molehill." (*Id.*) Defendant Bennett tried to talk Plaintiff out of making a formal complaint. (*Id.*) Plaintiff submitted a grievance against Defendant Bennett regarding "her unprofessional, threatening, and intimidating behavior." (*Id.*)

On March 22, 2021, Defendant Ford stopped Plaintiff outside of the chow hall and conducted a shakedown search. (*Id.*) During the shakedown, Defendant Ford stated, "You mess with one of us, you get us all. It would be in your best interest to sign off [on] the grievance against Gallagher for assault." (*Id.*) According to Plaintiff, Defendant Gunroe was present "during the whole episode and did nothing to stop [Defendant] Ford." (*Id.*, PageID.9.) Plaintiff later wrote a grievance against Defendants Ford and Gunroe.

On September 29, 2021, Plaintiff "attempted to gather personal medical information from Defendant . . . Bennett concerning a longstanding medical issue." (*Id.*) According to Plaintiff, Defendant Bennett tried to retaliate against him by giving the Resident Unit Manager "false information and a false report pertaining to Plaintiff's medical history." (*Id.*) Plaintiff gave the Resident Unit Manager "verified documentation to confirm that Defendant Bennett had provided a false report concerning Plaintiff's physical health and special medical accommodations." (*Id.*)

On May 2, 2022, Plaintiff filed a Prison Rape Elimination Act (PREA) grievance against Defendant Ford after Defendant Ford told Plaintiff, "You're a magician huh, make my balls

disappear then." (*Id.*) Three days later, Plaintiff was working in food service when Defendant Ford threatened, "I smell blood, today is a good day to get f***ed up." (*Id.* (asterisks in original).) He also told Plaintiff that he would "kick [Plaintiff's] ass if [Plaintiff did not] move" out of the way. (*Id.*) On May 6, 2022, Plaintiff submitted another grievance against Defendant Ford.

On June 7, 2022, Plaintiff wrote a grievance against Defendant Ford after Defendant Ford "instructed other prisoner[s] to encircle him, in an effort to intimidate and frighten Plaintiff." (*Id.*) On June 9, 2022, Defendant Ford issued a false misconduct to Plaintiff, alleging that Plaintiff was insolent and had engaged in threatening behavior. (*Id.*) According to Defendant Ford, Plaintiff stated, "I want to play games with you Ford! The game that I am going to play with you is going to be in the bathroom where I f*** you up!" (*Id.*) According to Plaintiff, what actually happened is that Defendant Ford asked Plaintiff for a shakedown, then ordered Plaintiff to "spin in a circle until I say stop." (*Id.*) Defendant Ford then said, "I'm going to have the last laugh." (*Id.*) Plaintiff responded, "You just can't help yourself, just leave me the f*** alone," and walked away. (*Id.* (asterisks in original).) Plaintiff claims that Defendant Ford fabricated the misconduct because he did not "get[] the reaction that he wanted" from Plaintiff. (*Id.*)

On June 23, 2022, Plaintiff received a hearing report regarding the insolence misconduct issued by Defendant Ford. (*Id.*, PageID.10.) In that report, Defendant Martin stated that he conducted a hearing with Plaintiff. (*Id.*) Plaintiff claims, however, that a hearing was never held and that Defendant Martin "fabricated the hearing report to protect [Defendant] Ford and the false misconduct." (*Id.*)

Plaintiff did have a hearing for the threatening behavior misconduct. At the hearing, Plaintiff pled not guilty on the basis that Defendant Ford fabricated the misconduct to retaliate for Plaintiff's grievances. (*Id.*) Plaintiff provided copies of the grievances against Defendant Ford as

4

proof. (*Id.*) According to Plaintiff, the hearing officer (not a party) "took the credibility of [Defendant] Ford [o]ver that of Plaintiff." (*Id.*)

Based on the foregoing, Plaintiff asserts the following claims for relief: (1) First Amendment retaliation claims against Defendants Gallagher, Ford, and Gunroe; (2) an Eighth Amendment excessive force claim against Defendant Gallagher; (3) Eighth Amendment deliberate indifference claims against Defendants Blemke and Bennett; and (4) a Fourteenth Amendment procedural due process claim against Defendant Martin.[2] (*Id.*, PageID.10–17.) The Court also construes Plaintiff's complaint to assert a First Amendment retaliation claim against Defendant Bennett and Eighth Amendments claim premised upon verbal harassment against Defendants Ford and Bennett. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.17.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[2] Although Plaintiff has set forth his claim against Defendant Martin under a subheading titled, "Retaliation," he explicitly invokes the due process protections of the Fourteenth Amendment in this section. (ECF No. 1, PageID.16–17.) The Court does not construe Plaintiff's complaint to set forth a First Amendment retaliation claim against Defendant Martin.

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Official Capacity Claims

As noted above, Plaintiff sues Defendants in both their official and personal capacities. (ECF No. 1, PageID.5.) A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823,

826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Thus, official capacity defendants are also immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). The Court, therefore, will dismiss Plaintiff's claims for monetary damages against Defendants in their official capacities.

Although damages claims against an official capacity defendant are properly dismissed on grounds of immunity, an official capacity action seeking injunctive or declaratory relief may constitute an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). However, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Here, Plaintiff seeks relief for past harms that occurred in 2020, 2021, and 2022; he does not allege that any named Defendant is engaged in any course of conduct that can be described as ongoing. Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently

prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *id.*; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Therefore, Plaintiff's claims for declaratory and injunctive relief against Defendants in their official capacities will also be dismissed.

### B.    Personal Capacity Claims

#### 1.    First Amendment Retaliation Claims

Plaintiff first asserts that Defendants Gallagher, Ford, and Gunroe violated his First Amendment rights by retaliating against him in various ways. The Court has also construed Plaintiff's complaint to assert a First Amendment retaliation claim against Defendant Bennett.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff alleges that Defendants retaliated against him because of: (1) his letter to the Warden to complain about Defendant Gallagher's "unprofessional conduct"; (2) his grievances against Defendants Gallagher, Bennett, and Ford; and (3) his PREA complaint against Defendant Ford. Plaintiff, therefore, has sufficiently alleged that he engaged in protected conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see also Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006)). The Court, therefore, will consider Plaintiff's retaliation claims against each Defendant below, analyzing whether Plaintiff has set forth facts regarding the other two elements.

### a.      Defendant Bennett

The Court has construed Plaintiff's complaint to assert a First Amendment retaliation claim against Defendant Bennett premised upon Plaintiff's assertion that Defendant Bennett gave Plaintiff's RUM "false information and a false report pertaining to Plaintiff's medical history." (ECF No. 1, PageID.9.) Plaintiff "believes this was done in retaliation for the previous grievance he filed against [Defendant Bennett]." (*Id.*)

9

Even assuming that Defendant Bennett acted adversely, Plaintiff merely alleges the ultimate fact of retaliation with respect to Defendant Bennett. Plaintiff has alleged no *facts* to support his speculative belief that Defendant Bennett provided the false information to the RUM in September of 2021 because of the grievance Plaintiff filed against her almost seven months prior, on March 1, 2021. (ECF No. 1-1, PageID.26.) Although Plaintiff filed his grievance against Defendant Bennett before she allegedly provided false medical information to the RUM, simply because one event precedes another does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). The Court, therefore, will dismiss Plaintiff's retaliation claim against Defendant Bennett.

### b.    Defendant Gallagher

Plaintiff alleges that Defendant Gallagher retaliated against him for writing a letter regarding Defendant Gallagher to the Warden and filing a grievance against her by: (1) threatening Plaintiff by telling him "I'm going to make your life a living hell in F-unit. Now that I know your name you better make sure that you dot your I's and cross your T's because you are my new project"; (2) forcing Plaintiff to remove his shoes during a shakedown; and (3) striking Plaintiff in the face with the hanger. (ECF No. 1, PageID.10–12.)

As an initial matter, with respect to the alleged threat made by Defendant Gallagher, such a vague statement would not deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g.*, *Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply

10

too vague to pass this threshold."); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (concluding that Golladay's threat that the ticket would be the least of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action."). The Court, therefore, will dismiss Plaintiff's First Amendment retaliation claim against Defendant Gallagher premised upon this alleged verbal threat.

Next, Plaintiff alleges that Defendant Gallagher forced Plaintiff to remove his shoes during a shakedown in retaliation for Plaintiff threatening to file a grievance. (ECF No. 1, PageID.11.) "Routine inconveniences of prison life . . . do not constitute adverse action." *See Reynolds-Bey v. Harris*, 428 F. App'x 493, 503–04 (6th Cir. 2011). Thus, "[a] single shakedown, unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard." *See id.* The facts as alleged by Plaintiff suggest that none of these factors were present when Defendant Gallagher ordered Plaintiff to remove his shoes during the shakedown. *See Cole v. McCroskey*, No. 1:18-cv-342, 2018 WL

3023439, at *7 (S.D. Ohio June 18, 2018) (concluding that ordering a prisoner to remove his shoes on one occasion does not rise to the level of adverse action), *report and recommendation adopted*, 2018 WL 3861869 (S.D. Ohio Aug. 14, 2018).

Moreover, even if the order to remove shoes constitutes adverse action, Plaintiff has not sufficiently alleged that Defendant Gallagher's action was motivated by his protected conduct. Although Plaintiff suggests that Defendant Gallagher forced him to remove his shoes only after Plaintiff threatened to file a grievance, his complaint does not reflect that. Rather, Plaintiff alleges that when Defendant Gallagher stopped him in order to conduct the shakedown, she ordered Plaintiff to remove his shoes. (ECF No. 1, PageID.7–8.) Plaintiff responded by telling Defendant Gallagher that "the lobby floor in F-unit was nasty and soiled from traffic in and out of the unit" and that "the removal of shoes is not standard practice for a pat down search." (*Id.*, PageID.8.) Plaintiff then told Defendant Gallagher that he would write a grievance if she forced him to remove his shoes. (*Id.*) Thereafter, Defendant Gallagher told Plaintiff to either remove his shoes or go to segregation. (*Id.*) Plaintiff's complaint itself suggests that Defendant Gallagher ordered Plaintiff to remove his shoes before Plaintiff even mentioned that he would file a grievance.

Moreover, Plaintiff alleges further that prior to being ordered to remove his shoes, Defendant Gallagher stated, "I am going to make your life a living hell in F-unit. Now that I know your name you better make sure that you dot your I's and cross your T's because you are my new project." (ECF No. 1, PageID.8.) As discussed *supra*, such a vague statement would not deter a person of ordinary firmness from exercising his or her First Amendment rights. However,, Plaintiff alleges no *facts* from which the Court could infer that Defendant Gallagher's reference to knowing Plaintiff's name meant that she was aware of Plaintiff's March 20, 2020, letter to the Warden regarding Defendant Gallagher's behavior when she ordered Plaintiff to remove his shoes. In any

12

event, although Plaintiff alleges that the patdown search occurred two days after he submitted the letter, the Sixth Circuit has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after the plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). Plaintiff's allegations are insufficient for the Court to infer that Defendant Gallagher ordered Plaintiff to remove his shoes because Plaintiff threatened to file a grievance. The Court, therefore, will dismiss this retaliation claim against Defendant Gallagher.

Finally, Plaintiff suggests that on February 26, 2021, Defendant Gallagher entered Plaintiff's cube during count and snatched a sheet and hanger off of Plaintiff's bunk, "causing the hanger to strike Plaintiff in the face at the corner of his eye." (ECF No. 1, PageID.8.) Plaintiff suggests that Defendant Gallagher did so to retaliated against Plaintiff for filing grievances against her "for her unprofessional behavior and her policy violating shakedown." (*Id.*, PageID.12.) Plaintiff, however, merely alleges the ultimate fact of retaliation with respect to this incident. He fails to allege any *facts* to support his speculative belief that Defendant Gallagher struck him with the hanger because of his grievances and complaints. Again, simply because one event precedes another does not automatically show retaliation. *See Coleman*, 474 F. App'x at 437. Plaintiff's conclusory allegations are insufficient for the Court to infer that Defendant Gallagher snatched the

hanger, causing it to hit Plaintiff, out of retaliation. *See Skinner*, 89 F. App'x at 580. The Court, therefore, will dismiss this First Amendment retaliation claim as well.

### c.      Defendant Ford

Plaintiff next contends that Defendant Ford retaliated against him for filing grievances and a PREA complaint by: (1) threatening Plaintiff by telling him "You mess with one of us, you get us all. It would be in your best interest to sign off [on] the grievance against Gallagher for assault"; and (2) issuing false misconducts to Plaintiff. (ECF No. 1, PageID.13–14.)

First, Plaintiff fails to state a retaliation claim against Defendant Ford premised upon his alleged threat for the same reasons Plaintiff fails to state a retaliation claim against Defendant Gallagher for a presumed threat. *See supra* Part III.B.1.b. The Court, therefore, will dismiss Plaintiff's retaliation claim premised upon that alleged threat.

The issuance of a misconduct charge can be considered adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007); *see also Hill*, 630 F.3d at 474 (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse"). Here, Plaintiff suggests that Defendant Ford issued Plaintiff a false misconduct on June 9, 2022, two days after Plaintiff submitted a grievance against Defendant Ford. (ECF No. 1, PageID.9.) Plaintiff's complaint, however, is devoid of *facts* from which the Court could infer that Defendant Ford issued the misconduct because of that grievance or because of any other grievance and complaint submitted by Plaintiff regarding Defendant Ford. Specifically, Plaintiff fails to allege facts suggesting that Defendant Ford was even aware of the grievances and PREA complaint Plaintiff filed against him. Although temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the United States Court of Appeals for the Sixth Circuit, has been reluctant to find that temporal proximity between the filing of a grievance and an official's adverse conduct, standing alone, is sufficient to

14

establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, 801 F. App'x 956, 960–61 (6th Cir. 2020) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). The Court, therefore, will dismiss Plaintiff's remaining retaliation claims against Defendant Ford.

### d.    Defendant Gunroe

Finally, Plaintiff contends that Defendant Gunroe retaliated against him by "allowing Defendant Michael Ford to threaten, harass, and intimidate Plaintiff." (ECF No. 1, PageID.15.) As noted above, Plaintiff alleges that Defendant Gunroe "was present during the whole episode" on March 22, 2021, when Defendant Ford conducted a shakedown of Plaintiff's person and stated, "You mess with one of us, you get us all. It would be in your best interest to sign off [on] the grievance against Gallagher for assault." (*Id.*, PageID.8.)

Plaintiff's sole basis for seeking to hold Defendant Gunroe liable is his failure to act and intervene to stop Defendant Ford's alleged threat. The mere failure to act, however, is insufficient to impose § 1983 liability. *See Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *see also Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Furthermore, to the extent a failure to intervene theory would apply to Plaintiff's claim against Defendant Gunroe, the Court has already determined that Plaintiff has failed to set forth a First Amendment retaliation claim against Defendant Ford regarding this alleged threat, and "[a] plaintiff cannot succeed on a claim for failure to intervene . . . when there is no underlying constitutional violation." *See Kayo v. Mertz*, 531 F. Supp. 3d 774, 799 (S.D.N.Y. Mar 31, 2021)

(citing *Wieder v. City of New York*, 569 F. App'x 28, 30 (2d Cir. 2014)). Plaintiff's First Amendment retaliation claim against Defendant Gunroe will, therefore, be dismissed.

### 2.      Eighth Amendment Claims

Plaintiff next asserts various Eighth Amendment claims against several Defendants. He contends that Defendant Gallagher violated his Eighth Amendment rights by using excessive force against him, and that Defendants Blemke and Bennett violated his rights by failing to provide medical care after the use of force. The Court also construes Plaintiff's complaint to assert Eighth Amendments claim premised upon verbal harassment against Defendants Ford and Bennett.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

16

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### a.    Excessive Force

Plaintiff claims that Defendant Gallagher used excessive force against him, in violation of the Eighth Amendment, by "snatch[ing] a sheet and hanger off of Plaintiff's bunk causing the hanger to hit Plaintiff in the eye." (ECF No. 1, PageID.12.) The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous" nor may it contravene society's "'evolving standards of decency.'" *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which,

17

although not physically barbarous, "'involve the unnecessary and wanton infliction of pain.'" *Id.*
at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton
inflictions of pain are those that are "'totally without penological justification.'" *Id.*

Not every shove or restraint, however, gives rise to a constitutional violation. *Parrish v.
Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992)
(holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights") (internal
quotations omitted). On occasion, "[t]he maintenance of prison security and discipline may require
that inmates be subjected to physical contact actionable as assault under common law." *Combs v.
Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th
Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending
conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380,
383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x. 579, 582
(6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment
claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273
F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of
the prison officials." *Williams*, 631 F.3d at 383. The Court asks "whether force was applied in a
good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."
*Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be
'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298
(1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily
excludes from constitutional recognition *de minimis* uses of physical force, provided that the use
of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal

quotations omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

While the Court is sympathetic to the fact that Plaintiff was hit in the corner of his eye by the hanger, his complaint is devoid of facts from which the Court could infer that Defendant Gallagher acted "maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Here, Plaintiff alleges that Defendant Gallagher snatched the sheet and hanger off of Plaintiff's bed during a shakedown of Plaintiff's living area. Nothing set forth in the complaint permits the Court to infer that Defendant Gallagher intentionally hit Plaintiff in the eye with the hanger in order to cause Plaintiff harm, or knew or should have known that by snatching the sheet and hanger she would cause Plaintiff harm. The facts alleged by Plaintiff suggest that Defendant Gallagher at most acted negligently when she "snatched" the sheet and hanger from Plaintiff's bed. Allegations of negligence, however, fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835; *see also Rhodes v. Michigan*, 10 F.4th 665, 678 (6th Cir. 2021) (noting that Supreme Court precedent "is clear that the deliberate-indifference standard demarcates accidents and ordinary injuries from actionable conduct in the Eighth

Amendment context"). Plaintiff's Eighth Amendment excessive force claim against Defendant Gallagher will, therefore, be dismissed.

> **b.     Failure to Provide Medical Care**

Plaintiff contends that Defendants Blemke and Bennett violated his Eighth Amendment rights by failing to provide medical treatment for Plaintiff's eye after Defendant Gallagher hit Plaintiff in the corner of his eye with the hanger. (ECF No. 1, PageID.15–16.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the

plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

Plaintiff's allegations are simply too conclusory to state Eighth Amendment claims for the denial of medical treatment against Defendants Blemke and Bennett. Plaintiff does not set forth any facts regarding his injuries, if any, after he was struck by the hanger and what he told Defendants Blemke and Bennett—if anything—about his condition. The Court simply cannot "infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Even if Plaintiff suffered a cut and bruise to his eye, such minor injuries do not constitute serious medical needs. *See Lockett v. Suardini*, 526 F.3d 866, 876 (6th Cir. 2008) (concluding that minor lacerations, cuts, and

21

soreness in two fingers did not constitute serious medical needs); *Blackmore*, 390 F.3d at 898 (citing cases involving minor injuries that did not support Eighth Amendment claims, including cuts and bruises resulting from a glass splinter that did not require stitches or painkillers); *Zentmyer v. Kendall Cnty., Ill.*, 220 F.3d 805, 810 (7th Cir. 2000) (reasoning that the failure to treat "the sorts of ailments [including scrapes and bruises] for which many people who are not in prison do not seek medical attention—does not . . . violate the Constitution").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff's Eighth Amendment claims regarding the denial of medical care against Defendants Blemke and Bennett will, therefore, be dismissed.

### c.    Verbal Harassment

The Court has construed Plaintiff's complaint to assert Eighth Amendment claims premised upon the verbal harassment by Defendants Bennett and Ford.

Plaintiff alleges that Defendant Bennett told him that he was "making a mountain out of a molehill" with respect to the incident involving the hanger, and that she said, "If a coworker accidentally bumped into me and scratched me, I don't report them as assaulting me, accidents happen." (ECF No. 1, PageID.8.) While unprofessional, allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* The Court,

22

therefore, will dismiss Plaintiff's Eighth Amendment claim premised upon verbal harassment against Defendant Bennett.

Plaintiff alleges further that Defendant Ford stated, "I smell blood, today is a good day to get f***ed up," and told Plaintiff that he would "kick [his] ass" if Plaintiff did not move out of the way. (*Id.*, PageID.9.) While unprofessional, Defendant Ford's comment does not rise to the level of an Eighth Amendment violation. *See Ivey*, 832 F.2d at 955.

Additionally, Plaintiff alleges that Defendant Ford allegedly made the following sexual comment: "You're a magician huh, make my balls disappear then." (*Id.*) This comment requires a closer look. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations omitted).

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642 (7th Cir. 2012) (discussing abuse by guards). However, some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320–21 (6th Cir. 2012) (finding that two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery*, 158 F.

App'x 656, 661 (6th Cir. 2005) (concluding that correctional officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (holding that male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (finding that, where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault).

In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that violates the Eighth Amendment. *Rafferty*, 915 F.3d at 1095. The *Rafferty* court found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched and intimidated her into complying. *Id.* at 1096. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.*

*Rafferty*, however, is distinguishable for Plaintiff's claim. Plaintiff alleges only that Defendant Ford made one sexual comment. Moreover, that comment, while offensive, did not evidence the sort of coercive sexual demand at issue in *Rafferty*. As a result, the alleged sexual harassment falls short of the severity necessary to state an Eighth Amendment claim. *Rafferty*, 915 F.3d at 1095.

### 3.  Fourteenth Amendment Procedural Due Process Claim

Plaintiff contends that Defendant Martin violated his Fourteenth Amendment due process rights by fabricating a hearing report regarding the allegedly false misconduct for insolence issued by Defendant Ford. (ECF No. 1, PageID.16–17.) Plaintiff contends that contrary to the report,

24

Defendant Martin never held a hearing, thereby depriving Plaintiff of "the opportunity to prepare a defense and/or call witnesses." (*Id.*, PageID.17.)

A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Apr. 18, 2022), a class I misconduct is a "major" misconduct and class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a class I misconduct. *Id.* ¶ DDDD.

Here, Plaintiff contends that Defendant Martin found him guilty of insolence without holding a hearing. Insolence is a Class II misconduct. *See id.* Attach. B. Plaintiff, therefore, could not have been denied good time or disciplinary credits as a result of this misconduct conviction. *See id.* ¶ DDDD. The United States Court of Appeals for the Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Moreover, Plaintiff does not set forth the sanctions he received as a result of the insolence misconduct and, therefore, fails to allege that any sanctions constituted an

"atypical and significant" deprivation under *Sandin*. Accordingly, Plaintiff's Fourteenth Amendment procedural due process claim against Defendant Martin will be dismissed.[3]

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not

---

[3] To the extent Plaintiff raises substantive due process claims regarding the allegedly false misconducts, he fails to state such claims. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff.

Moreover, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the First and Eighth Amendments, as well as the Fourteenth Amendment's protections regarding procedural due process, apply to Plaintiff's claims for relief. Consequently, any intended substantive due process claims will be dismissed.

be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00

appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is

barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is

barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

      This is a dismissal as described by 28 U.S.C. § 1915(g).

      A judgment consistent with this opinion will be entered.


Dated:    July 14, 2023                  /s/ Paul L. Maloney       
                                                   Paul L. Maloney
                                                   United States District Judge